We will hear argument next in case 21-511, Shoop v. Twyford. General Flowers? Thank you, Mr. Chief Justice, and may it please the Court. Justice Jackson long ago warned against giving the convict population of the country new and unprecedented opportunities to litigate until they serve their sentences or make the best of increased opportunities to escape. The Sixth Circuit here blessed precisely the sort of opportunity he warned of. It held that when a federal statute prohibits ordering a prisoner's transportation with the writ of habeas corpus, courts may instead order transportation under the All-Writs Act. But courts have no such power. Every All-Writs order must be agreeable to the usages and principles of law, meaning the traditional writs, as altered by statute. Transportation orders must be agreeable to habeas law, because habeas writs were the only traditional writs used for ordering the transportation of prisoners. So when a federal habeas statute prohibits ordering transportation with the writ of habeas corpus in a particular situation, courts may not evade that prohibition by issuing a transportation order under the All-Writs Act. But the order here was improper for a second reason regardless. Every All-Writs Act order must be necessary or appropriate in aid of the issuing court's jurisdiction. The order here doesn't qualify because it evades the rules governing discovery in habeas cases and facilitates the development of evidence that no habeas court can even consider. All that leaves only the question whether the circuit had jurisdiction in this case, and it did. The warden satisfied all three elements of the collateral order doctrine. First, the order here is conclusive. Second, the question whether the All-Writs Act empowers a federal court to interfere with the sovereign's management of its own prisons is both important and separate from the merits. And finally, the state cannot, states cannot meaningfully protect themselves from transportation orders unless they're allowed to appeal immediately. Regardless, the warden moved in the alternative for mandamus relief. If the court thinks the collateral order doctrine doesn't apply, it should remand with instructions to issue a writ of mandamus correcting the district court's egregiously wrong and dangerous decision. I welcome your questions. Just one question, General. Why should we consider this transportation order a writ of habeas corpus? I think there are actually two answers to that. One is you may not, because under the statute, there is a writ, some traditional writ to which this is analogous. We candidly don't think there is one, but the best they can possibly do in finding an analog is a habeas writ. So what do you think it is? We don't – we think it's not analogous to any historical writ. It's an ad hoc writ that the court had no authority on. No, I mean, how would you – I'm sorry. How would you characterize it for the purpose of deciding this case? We would say that because the closest analog, albeit a bad one, is habeas law, the order here was a writ in the nature of habeas corpus and therefore had to be consistent with statutes like 2241C. And it was not consistent with that because, as Judge Easterbrook explained in his opinion for the court in Ivey in the Seventh Circuit, 2241C prohibits writs of habeas corpus except in very – I'm sorry. No. Oh, except in specified situations. And C-5 is the only one dealing with transportation. It deals with writs of habeas corpus ad testificandum and ad prosequendum. This is neither of those and therefore falls outside C-5 and is impermissible. Counsel, I don't want to leave the – whether this is an appealable collateral order. It is conclusive under Mohawk, but we said there that the collateral appealable orders are a narrow and selective class. They have to be final. They can't be reviewed on appeal. But if the district court ultimately grants respondent's habeas petition, you can challenge the medical transport order and any evidence that it produces on appeal. If you succeed, that evidence could – will be excluded from consideration. That is exactly what we held in Mohawk in a situation where the privilege could be violated by turning over materials even under seal, because the privilege is not to turn them over to anybody, whether under seal or not. The third, and I think this is your important point, is that somehow you have some greater interest that this is an important question separate from the merits because state sovereignty is that issue. You're expending money in transporting this prisoner. But I understand that you're transporting him to a hospital that's regularly used by the prison to treat prisoners. You could put him on a bus that's going to that prison with other prisoners so there's no extra money in the transport. The inmate's test is going to be paid by defense counsel, not by the state. But more importantly, there are all sorts of discovery orders that require expenditure by the state, including deposing your experts. You have to pay for those experts to be deposed, including sometimes doing searches of your own records and organizing them. That accounts for vast expenditures. How – and we don't let any of those orders be reviewable. So I don't know how this fits into the Mohawk exception. We try to take that in three steps. The first thing I want to – I'll start sort of in reverse order. With the separate from the merits prong, if this Court determines that the inquiry is not separate from the merits, then it has announced a standard and at that point it could also reach the issue under a mandamus framework. But I'll put that aside for the moment. That is an interesting question because it is tied up with the merits. If the Court has power, the question is what limits, if any, are in that power, correct? So that's a merits question. No, because if we're correct under the All Writs Act, courts have no authority to issue transportation orders under the All Writs Act. But it does – but the merits still have to be addressed one way or another. No, we don't think so. So it's not separate from the merits. Respectfully, Your Honor, no. You'll never reach the merits of the underlying claims because the only question would be whether the Court had the power under the All Writs Act to do this, and the answer will always be no. I do want to emphasize, every single circuit to have ever considered this has said the collateral order doctrine applies. With respect to the injury, we're not worried about – And Mohonk, many have said privilege was. So we can't go by what their practice is. We have to go by what Mohonk said. I understand. Though Osborne, which was the last case in 2007 to recognize when the collateral order doctrine – a case in which it applies, did say that the fact that the circuits were unanimous was significant. I do want to – more importantly, though, get to your point about monetary harms. Our risks – the harms we're concerned with have nothing to do with money. We're worried about public safety and interference with the sovereign management of the prisons. In that context, the Court has said, for example, in United States v. Nixon, that even in the situation where the President subpoenaed the turnover documents, which is basically discovery, the – it could be immediately appealed because of the interference with the operations of another branch. Separate sovereigns are entitled to – But discovery orders of all kind pose that risk. And so that brings me to the second point I wanted to reach, which is how we distinguish Mohonk, and I'm happy for the opportunity to do so. What the Court stressed in Mohonk is that most attorney-client rulings are mundane questions. There's usually no error, and they can be corrected later on appeal, because usually the harm in the disclosure of attorney-client privilege, the Court said, is confined to the case at bar. It leads to evidence that shouldn't have been admitted. It causes the other side to have insight into litigation strategy and so forth. The exact opposite is true of transportation orders. Every single time we're subject to this order, we suffer harm that is unrelated to the case, namely the harm from having to expose the public to this danger. So that distinguishes that. I believe you also alluded to the importance of the issue, and sovereignty is what makes that different. Again, I point you to United States v. Nixon, for example, which said that – You still haven't addressed my question. How are all of those issues different in any normal discovery situation? Because in a normal discovery situation, the harm the party suffers can be cured on appeal. So, for example, if attorney-client privilege is breached and information is given to one side, they can then use as evidence against them at trial that can result in reversal. Most discovery orders are even easier than that. What makes this different is the harm we're sustained from this evidence. So could they do a writ if the defense paid for the transportation and the security? No, because, again, the writ has nothing to do with payment. The injury has nothing to do with payment. The injury we're suffering is the sovereign interference with our safe operation of our prisons that we cannot remedy on appeal, plus the threat to public safety. Once we transport him, we have sustained all of those harms. There's no unringing that bell after the fact. That's what makes this case different than discovery – typical discovery orders. It's what makes it more like the Nixon case or, if you want to look at the various immunity cases, where the harm of actually going to trial is fully sustained once you reach trial. If there are no questions on that, I can briefly reach the questions the court granted certiorari to address. We do think the closest analog here is habeas, and that's why, because this is inconsistent with habeas law, the writ can't issue. And if the court agrees with that, that's all you need to say to reverse the Sixth Circuit. Now, there's been this late push to analogize two discovery rules, saying that this is like certain rules that exist in the Federal Rules of Civil or Criminal Procedure. There are two problems with that. The first is that the discovery rules that they draw analogies to are not actually traditional writs, and you need to find some traditional writ to which this is analogous. Botsford, this court's decision in Botsford, makes absolutely crystal clear that courts have no sort of freestanding common law authority to invent new discovery methods. So there was no traditional writ that allowed that. What's more is that even if the discovery rules provided the relevant usages and principles, the order here isn't agreeable to those usages and principles. The reason for that is that habeas rule 6a provides the exclusive means for obtaining discovery in habeas. And it requires a good cause showing that Twyford has not met and has never argued he can make and indeed has affirmatively waived any intent to seek relief under. For that reason, this is permitting review that the habeas rules affirmatively disclose. That makes it like the Carlisle case. It makes it like the Syngenta case. And it makes it like the Pennsylvania Bureau of Corrections case in which this court said that when there's a statute that governs a particular issue, parties may not evade that using the All Writs Act. Are you taking the position that the SG was wrong in all the examples it gave of transport orders, for example, in a 1983 claim involving excessive force where prisoners ordered into a different medical facility to a medical facility for examination or a danger posed in a prison that's been proven, there's been a threat of a guard going to hire someone to kill him, and there's an order to transport him to another prison? All of those, you say, are wrong? I don't think they're wrong. I think those orders would not be issued under the All Writs Act and indeed could not be. So let me try to take them in the order you mentioned them. If the person has proved a violation, say, of the Eighth Amendment, that we're not providing medical care or maybe exposing them to a danger, then they can seek, they can bring an ex parte young action, seek relief. If the court issues an injunction, the court has never suggested that the inherent authority to enjoin a legal action stems from the All Writs Act. So that's off the table. The second would be that even if they for some reason can't bring that suit, if we are doing something that violates their constitutional rights, they could bring a mandamus suit to compel us to do something to vindicate their rights. And then finally, I took you to also be asking, and I take the SG to make the point, that in some cases, if a federal prisoner brings a 1983 suit, they may wish to have discovery and that discovery may entail a physical examination. So here's my answer to that. Rule 35A of the Federal Rules of Civil Procedure, at least arguably, would permit that plaintiff to seek that relief. The stat courts have gone both ways on the question. I don't think the court needs to decide that here, but it's at least possible that Federal Rule of Civil Procedure 35 will allow that. If it does not allow that, this court can, of course, amend Federal Rule 35 to permit it. And that's, if the answer is not provided by Federal Rule 35, that's the way to address the question. The matter of when prisoners should be moved from one place to another and the threat to public safety that it poses makes this an incredibly important policy question. It's the sort of question that should be answered in either a legislative process by Congress or a quasi-legislative process like this court's Rules Enabling Act process that would allow all the relevant stakeholders to bring forth all the relevant concerns. I don't think this court wants to bless a situation in which oftentimes, frankly, giving short shrift to the safety interests that the states have. So are you saying, putting aside your Rule 35 point, that the only reason you can transport a prisoner is to testify or for trial? Well, I wouldn't go quite that far. What I would say is that insofar as that's the only thing you can do under the All Writs Act. There may be a particular statute that applies in a situation that allows transportation. There may be a Federal Rule that allows transportation. But if there is none, and if you resort to the All Writs Act, then you need to show that the transportation is agreeable to the usages and principles of law. And if it's inconsistent with 2241C, it is not, and therefore... But I mean, we have a lot of cases that talk about the broad and flexible office of the Great Writ and under the All Writs Act, and it seems like that's a very confining construction. I think what we say is consistent with all those precedents, so I'll try to take them in order. One is Price, where the Court ordered a petitioner to be transported to argue his appeal, pro se. Now, that was before 2241C was enacted. There was a predecessor statute that was strikingly similar. The key point, though, is that Price never considered that statute. I don't know if it wasn't raised or what the reason was, but it simply never addressed the problem. So stare decisis absolutely requires the respect, the holding of Price. It does not require extending Price's holding to a new context when doing so would require rejecting an argument that case never considered. The next case, I think, is Hayman. Hayman comes out exactly the same way under our theory, though the reasoning would be slightly different in light of subsequent legal developments. So in Hayman, it was a 2255 case. 2255 does anticipate transportation orders, and the Court said that as long as you have the All Writs Act, you can issue a writ in the nature of habeas corpus. That, by the way, proves our point that these writs are in the nature of habeas corpus. But it issued what was effectively a writ of habeas corpus ad testificandum. You might ask, why didn't it just do it under C-5? That's the way the case would come out today. The Court wouldn't need the All Writs Act. The reason it didn't invoke C-5 is because at the time, courts had assumed, and Hayman, in fact, assumed that a different statute, 2241A, prohibited courts from invoking 2241C except with respect to prisoners located within their jurisdiction. Years later, in Carbo, this Court clarified that that was not the case, and that 2241A has no bearing on writs issued under C-5. So Hayman comes out the same way, and Price came out differently under an old statute that it failed to consider. So I don't think this is contrary to any of those, and I do want to stress that allowing it under the All Writs Act would be inconsistent with the cases this Court's announced in the years since New York Telephone that have attempted to rein in, shall we say, overly expansive readings of the Act. So in Syngenta, in Carlisle, and to some extent, Pennsylvania Bureau of Corrections, the Court has made absolutely crystal clear that when there's a statute or a rule that governs a situation, you cannot use the All Writs Act to evade that. This, if it's anything, is a writ of habeas corpus. They need to be agreeable to that. It's not, and for that reason, it's improper. If there are no further questions, I'm happy to reserve the rest of my time. Thank you, Counsel. Ms. Reeves? Mr. Chief Justice, and may it please the Court. In certain rare circumstances, a federal court may order a state prisoner transported under the All Writs Act. Such an order can be agreeable to the usages and principles of law because it is analogous to numerous discovery provisions and consistent with the Court's longstanding use of the Act to assist litigants in conducting factual inquiries. And a transport order may be necessary or appropriate in a Section 2254 case if a prisoner shows good cause for the order and demonstrates that equitable considerations support his transport request. The Court took this sort of authority for granted in Reeves, and it should not now foreclose courts from issuing transport orders under the All Writs Act. This Court has repeatedly rejected the Warden's proposition that an order may be issued under the Act only if there is a common law analog. And the Warden's sweeping assertion that Section 2241c governs all prisoner transport relies on an atextual reading of that provision and a misunderstanding of habeas corpus. I welcome the Court's questions. If we don't have a common law analog, how do we determine whether or not the writ is agreeable to the usages and principles of law? So a couple of points on that, Justice Thomas. First of all, I think I'd urge the Court in this particular case to take the sort of approach that it took in Harris, where when in a similar petitioner could engage in discovery and there weren't any applicable discovery provisions to 2255 at that point in time, the Court looked to the federal rules of civil procedure. And I think that that is consistent with this Court's general approach in this sort of situation. The Court's been fairly limited when it finds something blocked by existing statutory law and has only done so in a couple of situations that I'd be happy to elaborate on. Actually, what I'd like you to elaborate on just a bit, the jurisdictional question. So the United States does agree that the warden has jurisdiction here. I think that the order, the transport order conclusively determines the disputed question of whether there'll be transport. It resolves an issue completely separate from the merits. It's separate because it's almost an evidentiary consideration under the good cause standard as to whether this particular order should issue. And it's important because the state does have interests, like the President had in Nixon, in running its prisons, imposing presumptively lawful sentences without undue federal interference, and avoiding the risks inherent in prisoner transport. How would you distinguish this, though, from any other discovery order? So the harm with a discovery order can be remedied at the final judgment because whether the evidence did or didn't come in can be fixed by a new trial. Here, the harm that the warden is complaining about is just inherent in transport. It's nothing related to this evidence coming in or staying out. And that particular harm can't be remedied on appeal from a final judgment here. Counsel, but that's true of Federal Rule 35 order. If someone's mental health is at issue and the court orders under Federal Rule 35, a transport, that medical evidence can or cannot come in, but it may or may not be dispositive of the outcome of the case. So a couple of responses to that. First of all, when it comes to the collateral order doctrine, it's true that lower courts have generally held that Rule 35 orders are not immediately appealable, but that's because a Rule 35 order is focused on requiring an individual to be subjected to an examination and the resulting evidence. There isn't usually a transport order. And that's a transport order, too. Rule 35 is a transport order, permission to transport someone for a medical exam. I don't think courts have ever interpreted it. We were unable to find an example of a situation like this where a prisoner seeks transport for an examination. Suppose the order, same question, same order, but it was denied. Can the prisoner appeal it? I mean, can the person who wanted the order, can he appeal? So I don't think you need to reach that question. I just want to know what your response is. But yes, lower courts have unanimously found, just as they've unanimously found that orders like this are immediately appealable, they found that orders denying transport are not immediately appealable. They're not. Okay. So we have now a new category of orders. Which category of discoveries, orders, by the way, discovery costs money. And so even if a defendant is, doesn't end up making much difference to the case, it's going to cost him money. So he'd like it now to save that money, just as the state would like it now to save the evils that they say this order is going to provide. So I'm still back to the original question that Justice Thomas asked. There is a category of orders such that if you grant them, the defendant can appeal, often the state. But if you deny them, there is no appeal. Now, are there other things like that? Is that a big category, a little category? And by the way, there are other methods of appealing. You have 1292B, not perfect, but it's there. And you also have mandamus. So I'd like to know rather specifically what this category is that you're giving appellate rights to, collateral appellate rights, where one side can do it, but not the other. So Justice Breyer, let me offer up a couple of responses to that. First of all, I think the category here would be orders requiring a state warden to transport a prisoner. That would be immediately appealable. But not a state order, not a discovery order, which requests that the secretary, the state secretary of the treasury go through records and provide the records that the person, you know, we can think of dozens of things like that. So I don't know if you can limit it just to transport orders. So I think a court can limit it pretty easily to transport orders, and lower courts have had no problem doing that. And that's because the state and the warden have to incur normal discovery costs and burdens. That's not something that creates the basis for an immediate appeal. Okay. By the way, I just did think of one. I mean, what we would like is we would like a person of the defendant's choosing, if you wish, happens to be the state, to go through the, what do you call it, you know, where they put the dead people. We'd like them to look at that. At the morgue? Yeah, the morgue. We want them to go through the morgue because there happens to be stuff in there that will help us win this. And the state says, you can't go into the morgue? My God. I mean, you know, that's sovereignty and a lot of things. Okay. Are they included or not? I don't think so. And again, that's because one of the interests, the state has a number of interests here, but one of them is the risks inherent in transport itself. Going back to the component of your question about whether there are other situations in which there are asymmetrical appeal rights, the Barnes Seventh Circuit decision that petitioner cited in their opening brief gives several examples of other asymmetrical appeal rights under the collateral order doctrine. That includes grants of qualified immunity, particularly partial grants of qualified immunity. It includes bonds in civil cases. The denial of a bond is immediately appealable. The grant is not. And in addition to that, there are certain first amendment pretrial orders that are generally seen as immediately appealable if they're granted, but not if they're denied. Counsel, you had answered my earlier question. I asked about federal rule of civil procedure 35, and you said that's not immediately appealable, but it says, and it's the court where the action is pending may order a party whose mental or physical condition, including blood group, is in controversy to submit to a medical exam. The court has the same authority to order a party to produce her examination, a person who is in its custody or under its control. So if you start by telling me that the All Wits Act, we should look at the federal rules to guide us on what is permissible or within the usages of law, doesn't that tell me? I think that rule 35 is a good analog, along with other rules of civil procedure and federal criminal procedure. If this is not subject to collateral attack, why would this order be? Again, the same, the exact same issue. So I disagree that it's the exact same issue. I think orders requiring a warden to transport a prisoner. The court has the authority, I'm reading it, to order a party to produce for examination a person who is in its custody or under its legal control. That's the transportation order in my mind, and the rest of it, take my word for it, just requires that the notice of the motion tell you where, when, and by whom. So again, courts don't generally view that as a transport order. It's never been applied to require a warden to transport a prisoner, to the extent it's required an individual, a parent, for example, to produce their child for a physical examination. That doesn't raise the same sort of state. So you're, on behalf of the United States, you're saying that under Rule 35, any order issued under Rule 35 to a warden would be collaterally reviewable? If it ordered transport, I think that it would, and that's consistent. If it's just an order of go here and be examined? If it's an order, an examination that could occur in the prison, I don't think that would be a transport order. It wouldn't be immediately appealable. Oh, well, by the way, that order happens to ask the state to produce John the Tiger Man, who is the most dangerous prisoner they have ever discovered. Because here, by the way, their complaint is, one, there is danger, and two, it costs money. Well, they'll pay the money, so it isn't going to cost them money. So they're left with danger. And by the way, depositions of death row inmates may, in fact, cost a lot of money. But you are saying that ordering a deposition of a death row inmate is not appealable? Or do you say it is appealable? So I don't think the court would need to reach that. I think that if the problem that I'm having, you do need to reach it. Because I'm trying to figure out what the category is of the orders that the state can appeal, the discovery orders that the state can appeal collaterally, but the prisoner cannot. And you've got one of them, transportation. And the reason you have transportation, I take it from the other side, is because, is danger involved? Okay. I have only been here for a few minutes, and it seems to me I've thought of a few which also involve danger, like the Tiger Man, okay, or death row inmates. And I bet imaginative counsel there can think of a few more. So you want to stick to the only orders that are appealable immediately, collaterally, are transportation orders, and nothing else that provides danger, or what? I think one way to think about this would be, is the category of orders, as the court suggested in Mohawk, always going to raise this type of issue? Here, this type category of orders, because of the nature of transport, are always going to raise the risks issue. Deposition orders, assuming the deposition is happening at the prison, that's not always going to raise categorical issues the same way that transport is. And I think for that reason, that might be a situation in which mandamus, or a certified appeal, is more appropriate, and you don't need the collateral order doctrine to come in as to the entire category of orders. Ms. Rietz, I'm just curious, how many transports of prisoners are there daily in the prison system? I don't have a number for that, but I think we Some of your amigis say thousands a day. I wouldn't contest that, but I would say that most of those are not pursuant to a court order. Most of those are just occurring in the normal course of prison administration, and aren't occurring in a situation like this. I take the point, but it does suggest that, you know, not every transport of a prisoner is going to raise security concerns of the kind that you're talking about. That that's going to be, you know, maybe the unusual case if prisons, they know how to do this, do it thousands of times a day. So I don't think it's just the security concerns here. It's also the component of a, that's definitely part of it, but the additional components include the fact that a federal court is interfering with a state's prison administration in this kind of enormous way. And so I think all of those things together makes this case look more like Nixon from an interest perspective. And I'd also point out So that's any court order that a state can say you're interfering with my sovereignty? That now becomes immediately appealable? No, it's all the components that I just discussed. And I think as far as your question goes about how often this arises, the fact that this hasn't arisen either direction since Mohawk until this particular case shows how infrequently these sorts of orders are litigated and why the court shouldn't be concerned about extending the collateral order. Once we say that there's no power ever under any circumstance, then all of the orders that we've issued in the past, and Reeves ordering the transport of a prisoner to come argue before us, ordering another habeas prisoner to be examined, those were ultra virus by us. But we're stopping other courts from doing the same thing, correct? So I don't think that whether something's immediately appealable suggests that any of those prior orders were invalid. And we aren't taking the position that, obviously, the United States is taking the position that orders like that can be permissible under the Albritts Act. Thank you, counsel. Anything further? Justice Kavanaugh? Just wanted to follow up, Ms. Reeves, on Justice Thomas's first question. So if there's no common law analog and no specific statutory authorization, in the end, it seems to be a policy judgment of sorts, how much we think we should analogize to other rules or what have you, as you point out. If it is, in the end, a policy judgment, the other side says leave it to Congress or the Rules Committee, given the public safety issues involved. And just wanted you to respond to that. And maybe also tell me what should inform that policy judgment if we're making it. Is it just the benefits, fairness in individual cases outweigh the costs, even though you don't think they do in this particular case? So I think it's important to start from the fact that the Albritts Act is always fulfilling a gap-filling role. And it always comes into play when a statute doesn't directly cover a situation, but there is some type of analog. And obviously, here, we think that the appropriate analogs to look at are these federal rules we've identified. They don't directly cover, but they do come in through Rule 6 in appropriate situations. And that's what the court should be looking at. As far as whether the court should feel uncomfortable here in this particular case because of policy considerations, I think that that isn't quite the role for the court to play here. I think the court has to ask, is there a gap that we can fill? And whether the components of the Albritts Act are, in fact, met here. And I think that the court should look at analogous cases, again, like Harris. The court there, discovery rules at that point in time didn't apply to 2255 cases, but the court said that it could still engage in gap-filling in that particular situation. And if you're worried about the transport component here and the dangers, as we explain in our brief, we do think that part of the necessary or appropriate consideration courts should take into account are dangers related to that. And if the court wants to say something along those lines here, that courts need to take that into account before issuing one of these transport orders under the Albritts Act, that they can do that. And this court could do that to make that clear. Thank you. Anybody have anything on this side? No. Thank you, counsel. Mr. O'Neill. Mr. Chief Justice, and may it please the court. The order that the state has spent the last three years litigating simply requires the warden to move an inmate between two secure prison buildings, from the detention center to the official prison hospital, so that the inmate can undergo a medical test. That kind of movement happens thousands of times a day around the country, every day of the week. There is no appellate jurisdiction over an interlocutory order involving such a routine event, particularly one that merely removes an obstacle to counsel's investigation of the case. To allow the appeal to proceed now would require a dramatic expansion of the Cohen doctrine, despite this court's consistent efforts to narrow it. If this court does create a new Cohen category, it should affirm. There is no basis for Petitioner's novel rule that the Albritts Act can never be used as authority for a prisoner transportation order. For three quarters of a century, this court has approved of the use of the Albritts Act in habeas cases, and specifically for the purpose of ordering prisoners transported. To adopt Petitioner's categorical argument, this court would have to repudiate at least three of its own decisions, cast serious doubt on federal court authority in a wide range of other contexts, and change the basic approach that has characterized the Albritts Act for the last 200 years. Once this court concludes that the Albritts Act permits prisoner transports in some circumstances, the only question left is whether the Act permits a transport in these circumstances. That is a classic issue for the district court's discretion, and the Sixth Circuit correctly held that there was no abuse of discretion here. But if the court adopts a standard fundamentally different from the one the court supplied below, the only appropriate resolution would be to remand so that the district court, which has the competence and the familiarity to untangle fact-bound questions, could address it in the first instance. I welcome the court's questions. Do you know whether you're going to use whatever it is you find from the scan in a habeas proceeding? Justice Thomas, I'm happy to explain how this evidence would be useful to us, but if you'll indulge me, I'd like to come back after that to explain why that's not the question either that this court needs to answer at this stage or that we were required to answer below. But I will address the question. So there are at least four ways that this evidence would be useful. First, we have an ineffective assistance and mitigation claim. The jury never heard any evidence about the effect of a point-blank gunshot wound on Mr. Twyford's cognition and therefore his culpability. They didn't hear anything about that because counsel never bothered to investigate it. That was so even though one of the statutory mitigating factors under Ohio law was mental defect. And even though the jury instructions for the capital offense required the jury to find prior calculation and design on the part of Mr. Twyford. Even without that evidence in the record, the Ohio Supreme Court upheld the death penalty here by a single vote. So that's the first way. The second way is if this evidence shows, as we expect that it will, that Mr. Twyford has a severe deficiency in his ability to plan ahead and to think ahead, that will support a new claim of ineffective assistance at the guilt phase. It would go to his trial, the voluntariness of his confession. Third, to the extent procedural default issues arise in the district court litigation, that's a federal law issue and this information that would come from the test could inform that. And fourth, putting aside the issues of procedural default, if the evidence is as significant as we expect that it will be, we would seek a stay under Ryans v. Weber to go back and develop the state court record and present those issues to the state court. But Justice Thomas, I don't think those are the questions that this court needs to resolve to get to resolve the question of whether the district court had the authority to issue this order and whether appropriately exercised its discretion to do so. And in order to do that, I'd like to posit a slight variation on this case. If the warden refused to move Mr. Twyford from his cell at this correctional institution to an examination room so that he could meet with his expert, I think there would be no question that the district court would have authority in those circumstances to tell the state that they have to not frustrate the district court's order and to allow the inmate to go and meet with his expert. I think that would be obvious. That is conceptually no different from what is happening here. But I guess my point is, I understand you will certainly state the facts and the examples in a way that are in your best interest. But on the other end of that, you don't seem to have any limiting principle. I mean, if he has no idea whether or not he has a claim, it seems as though he could meet with virtually anyone. Yes, an expert would be important. The doctor might be important. But he might say, I need to meet with a mentalist or someone to help me recover my memory. There's all sorts of things. There seems to not be a point to it, a particular issue that you are trying to, that you have evidence and you're proving it. It's almost as though it's a fishing expedition. And I don't know how you limit that. Right. So let me explain the numerous limiting principles on the district court's authority here. This order is permissible only for a few reasons. One, it is consistent with and agreeable to the usages and principles of a very specific law, 18 U.S.C. 3599, in which Congress said that capital death row inmates like Mr. Twyford shall be entitled to the services of expert, investigative, and counsel where reasonably necessary. The only reason that this order is necessary is because the state is not permitting Mr. Twyford access to those services. It's necessary because he cannot engage in the kind of testing that the doctors here have recommended in the hospital. So the only way that he can do it is be transferred outside the facility to another prison facility. And the fourth is, we're not talking about a mentalist or any request of any kind that a prisoner can come up with for investigation. We are talking here about an indication from the Ohio State Director of Cognitive Neurology that the frontal lobe here likely has suffered damage and needs to be investigated. And it is based on the undeniable fact, which the state does not refute, that Mr. Twyford suffered a point blank gunshot wound at the age of 13, leaving metal in his head. But you're willing to say that this order is, that you have this right, that your client has this even if there's not, you determined that there was no negative effect on his mental capabilities as a result of this? We just don't, we don't know the answer to that yet because the test has not come back. We think that if the court is going to take this almost like a motion to dismiss and evaluate whether he would be able to show, whether he'd be able to be entitled to relief, then it has to that the test shows the severe harm. And if that's the case that we... It just seems a little inconsistent with how constrained we have been in the, under ADPA. And it just seems that this is out, this goes beyond what we've done in Cullen and Penholster and some of the other cases. So Justice Thomas, let me explain why I actually think this is consistent with what this court has done. The United States says you need to look here to an analog to this kind of order in order to place it within the usages and principles of law. The court is not writing on a clean slate here. There is a broad spectrum of types of factual development that take place in the district court. At one end is the inquiry that happens in cases like Penholster and Shiro v. Landrigan and 2254 where the petitioner, the inmate is seeking to introduce known facts in evidence. We are at the opposite end of the spectrum. We're not at discovery. The state hasn't even answered the petition. We're at the investigation stage. And this court specifically addressed that stage in ISDIS. It specifically addressed it in the context of 18 U.S.C. 3599 in which Congress intended for capital death row inmates to have access to these investigative services. And what it said there, despite Texas in that case advocating for Penholster to play the gatekeeping role, this court did not adopt that standard. It didn't even cite Penholster. Instead, it said that the standard is whether a reasonable counsel would regard the services as having likely utility. And that is much less demanding than the standard that the state is advocating here. Under ISDIS, the standard is, is the underlying claim plausible? Is there a credible chance of overcoming procedural default? We satisfied So on to that issue, did you present to the court below? I didn't see it in any of your briefing. I didn't see it anywhere in the district court or circuit court's opinion. I only saw it in the dissent downstairs below that you have to bear a burden of showing at least there's a plausible reason the evidence could be, would be admitted. So where did you make that showing below? We did make that showing under the standard that the district court imposed. And we showed that there are numerous ways in which this evidence could be useful. Penholster No, that's different than whether it would be admissible, because that's what Justice Thomas was asking about Cullen versus Penholster. There is an obligation on habeas to ensure that it's useful for some purpose. Right. Where did you make that showing below? We explained that first Penholster applies only claims under 2254 D1. So if the claim was not adjudicated on the merits, Penholster does not apply. To the extent we are presenting a claim that was adjudicated on the merits, D1 can be overcome and we can show that the state court's adjudication on the merits was unreasonable. In addition, we can make these arguments as to procedural default. There are numerous ways in which this evidence may be useful, again, depending on what it is. Despite Penholster, we simply don't know yet how those questions are going to be presented because we're at the investigation stage of this case. This request arises in the context of counsel's investigation, which usually would take place entirely out of sight of a court. And I think understanding how this happens in the usual course explains also why this fills a gap and therefore is appropriate under the All Writs Act. So typically, a prisoner would go to a court seeking funding under 3599 for an expert. The court would determine whether reasonable counsel would regard that as having likely utility and if so, would issue the order. At that point, the warden would effectuate the order and there wouldn't be this issue. Mr. Twyford is unusual in that he has funding of his own for this test. And so when the state refused to allow him access to the services the expert said were necessary, the only recourse was to the All Writs Act, which could then fill that gap and effectuate Congress's intent that this capital inmate have an opportunity to access these services. But if the only thing counsel said was, we'd like this testing, we really don't know what might assist any claims that we might bring, but we just want to see whether anything pops up. Is that enough? Justice Alito, I think that likely would not be enough. And I think district courts, as you wrote in IASTIS, district courts have plenty of experience making the kinds of determinations that they ask to stand and contemplate. They would probably not be enough. You won't even – okay. What's wrong with saying you have to make a connection with HEDPA? This is a habeas proceeding. And whatever you get, you're going to have to be able to get before the court that's going to decide the habeas petition. What's wrong with saying that? So identify the claims that you're thinking of. Explain what evidence you think you may get from the testing. Explain how you think you would be able to get that evidence before the court in the habeas proceeding. Why is that so onerous? That, the way you just described the standard, is not onerous if what is required is what's required in IASTIS, which is that the claims be plausible and that there be a credible chance of overcoming procedural default. What the state is arguing is for something fundamentally different. It is saying you have to show exactly how this evidence, before you even know what it is, before the investigation has been conducted, is going to help you – is going to win you relief on the merits. And IASTIS considered that. IASTIS did not adopt that standard. But we accept a standard that requires us to show some connection to the claims that we have. In fact, we pointed to four claims below. The district court credited counsel's assertion that this investigation was necessary to investigate those claims. And it noted that the showing was supported by objective and compelling facts. In particular, the referral from the Director of Cognitive Neurology and also the undeniable fact of Mr. Twyford's point-blank gunshot injury. May I ask you a question about your argument on jurisdiction? From what you said this morning, it wasn't clear to me whether your argument is that no transport order – that the granting of a transport order may never be appealable under the collateral order doctrine or whether there's a lack of appellate jurisdiction here only because of the specific facts involved, it wasn't a long trip, et cetera. Which is it? This court should not create a new category of appealable orders for transportation orders, so transportation orders are not appealable as a class under the blunt instrument of Cohen. Where the warden believes that there is some egregious error by the district court, it can pursue mandamus. It can consider 1292B and seek a certification for the district court. Or it can use the process that the state has held up today as the right route and go to the Enabling Act process and seek to create a category that way, which is what the court in Mohawk said. So if we return to the tiger man, so suppose that the order is to transport the tiger man from one part – all the way across the country for a period of treatment that's going to last for 45 days. And the district court says, and he's not to be shackled in a way that's going to make him miserable during this trip. That's not – you would say, well, that's – you can't appeal that? That's a great case for mandamus. And I think that, you know, any court would regard that as pretty egregious. But I would actually like to – So, you know, from between that and traveling across the street, there are all sorts of gradations. Why shouldn't it just be the rule that these are appealable? What's the big deal about that? Because it is inconsistent with Mohawk. I mean, Justice Thomas made an excellent argument in Mohawk that Cohen should stay right where it is given the availability of 1292B and mandamus and the Rules Enabling Act. But at the very – No, it's a question of statutory interpretation. And we interpreted 1291 the way we did, and we practically never undo our decisions on statutory interpretation. And, you know, it's not a final decision. It doesn't necessarily mean the final order in the case. That's not a necessary semantic interpretation of that phrase. It could be exactly what Cohen says, a final decision on a particular discrete matter. So why this – you know, why draw this line? Because it's inconsistent with Mohawk. At a minimum, it would need to satisfy – if you're going to stick with Cohen, it needs to satisfy the three Cohen factors. Here, this one fails multiple. First, it's not separate from the merits. The whole argument and the theory of the dissent below was that before you can issue an order like this, you have to evaluate use and admissibility. These are the classic merits questions that are unsuitable for review under Cohen. Second, it's not effectively unreviewable for exactly the reasons that Justice Sotomayor was elaborating on. Any time the State – Well, let me just stop you there. It is unreviewable because if Tiger Man escapes or kills somebody during his trip, there's no way that's going to be remedied at the end of the case, right? So it is part of the State's core function and competence to move prisoners back and forth between these two prison facilities. And a lot of the State's argument – essentially, the State's argument on jurisdiction ultimately rests on this public safety argument. The State did not argue public safety in the district court, and had it done so, we would have introduced evidence that this particular inmate has been moved 16 times between these two facilities, that he is 60 and half blind, and not surprisingly, there was no incident on those trips, that this facility is a prison. The State's brief and that of its meekie conjure these images of, you know, inmates walking the halls of the Ohio State Medical Center. This is a prison within the hospital. It is operated by the Ohio Department of Corrections. If any inmate has anything other than the most routine medical care, they are put on a transport van and they are sent either to the Franklin Medical Center or to this facility, and the Ohio Department of Corrections advertises that on its website. And I would like to explain why – I think it goes to your question why this is not immediately reviewable. To evaluate the situation, if this were slightly different, Mr. Twyford wants to go see his expert in an examination room at the Chillicothe Correctional Center where he lives. And the warden says, we are not moving you from your cell to go and do that. Again, I think it's clear that the district court would have gap-filling authority under the All Writs Act to issue that order. And if that is true, which it has to be, then several other things are true. First of all, we wouldn't consider that a writ of habeas corpus. Second, it wouldn't be effectively unreviewable. It wouldn't be a collateral order under Cohen. Otherwise, any time the warden refused to move someone within the prison, that would give rise to a mid-case appeal, and that can't be right. And the prisoner, in order to get that meeting, would not need to show how the evidence would ultimately be usable. That is conceptually no different from what we have here. Mr. Twyford is being asked to move – asked for the warden to move. District court's authority does not depend on whether it's an inter-facility transfer, in other words, a transport by prison van from one building to the other, versus an intrafacility transport, meaning like on an elevator from one floor to the other. Those are equally true here. And if the court has no further questions, I'm happy to rest on our Thank you, Your Honors. I want to briefly make, if I can, three points. The first is that in terms of the difficulty of applying the collateral order doctrine, appellate courts for decades have had no trouble doing so to these cases, in large part because most transportation orders are never appealed. There's not actually a problem. It's when the State is concerned with interference with its affairs that it does appeal. To the extent the court's worried about that, though, it's free here to announce the standards and remand for the Sixth Circuit to consider the still-never-resolved mandamus request through the application of the proper standards. Second, you must have a traditional analog in order to invoke the All-Writs Act. It is not a freestanding power to make up ad hoc writs. The court's been very clear about that. And if you hold that there is such a power, you'll be contradicting those and inventing a rule with no limiting principle, as Justice Thomas noted. As best I can tell, Twyford believes the All-Writs Act allows courts to do anything that may have some speculative benefit to furthering the resolution of a case. The court has never adopted so freeform a version of the All-Writs Act, and it shouldn't do so here. That's especially true because, as this court recognized last week in Brown v. Davenport, the history of habeas law shows that the tendency to interfere with the court is to expand and expand and expand. And I can assure you from my experience in this field, there will be a habeas bar eager to expand whatever door you leave ajar to make it as open as it can possibly be. And that brings me finally to the question about what's the big deal? Prisoner transportations happen with some regularity. There is a world of difference between the state deciding in its own exercise of its management of its prisons that transportation is warranted and can be done safely, and a Federal court interfering with the operations of our government and telling us when and how we can move prisoners. Under our rule, the All-Writs Act does not permit the courts to do that. Courts can do so only when a rule or a statute specifically permits them to do so. When Congress or this court have decided that the benefits outweigh the risks, that is the rule the court should adopt in this case. If there are no further questions, I can sit down. Thank you, counsel. The case is submitted.